# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CLAUDE P. LACOMBE,                          :
                                            :
            Petitioner,                     :
                                            :
      v.                                    :        Civ. Act. No. 17-1518-LPS
                                            :
ROBERT MAY, Warden, and                     :
ATTORNEY GENERAL OF THE                     :
STATE OF DELAWARE,                          :
                                            :
            Respondents.[1]                 :

---

## MEMORANDUM OPINION

Claude P. LaCombe.  *Pro so* Petitioner.

Carolyn S. Hake, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

April 9, 2021
Wilmington, Delaware

---

[1]Warden Robert May replaced former Warden Dana Metzger, an original party to the case.  *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

## I. INTRODUCTION

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and an amended Petition (hereinafter collectively referred to as "Petition") filed by Petitioner Claude P. LaCombe ("Petitioner"). (D.I. 3; D.I. 11)  The State filed an Answer in Opposition, to which Petitioner filed a Reply. (D.I. 20; D.I. 23)  For the reasons discussed, the Court will dismiss the Petition.

## II. BACKGROUND

On December 26, 2011, Petitioner participated in a robbery with three other men, including his brother, during which two individuals were killed. *See LaCombe v. State*, 93 A.3d 654 (Table), 2014 WL 2522273, at *1 (Del. May 30, 2014).  In January 2012, Petitioner was indicted on two counts of first degree murder, four counts of possession of a firearm during the commission of a felony ("PFDCF"), two counts of attempted first degree murder, and second degree conspiracy. (D.I. 20 at 1)  On April 11, 2013, Petitioner pled guilty to one count each of second degree murder (as the lesser-included offense of first degree murder), PFDCF, attempted first degree robbery, and second degree conspiracy. *Id.*  In September 2013, the Superior Court sentenced Petitioner to life imprisonment for the murder conviction, pulse additional time for the related convictions. *See State v. LaCombe*, 2017 WL 6550430, at *1 (Del. Super. Ct. Dec. 21, 2017).  Petitioner filed a *pro se* motion for modification of sentence, which the Superior Court denied. (D.I. 20 at 2)

In October 2013, Petitioner filed a direct appeal.  While the appeal was pending, Petitioner's counsel filed a second motion for modification of sentence.  On May 30, 2014, the Delaware Supreme Court affirmed Petitioner's sentence. *See LaCombe*, 2014 WL 2522273, at *2.  On August

26, 2014, the Superior Court denied Petitioner's second motion for modification of sentence. (D.I. 18-1 at 12)

In May 2014, Petitioner filed in the Superior Court a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion to appoint counsel. (D.I. 18-1 at 11) The Superior Court granted the motion to appoint counsel. Post-conviction counsel filed an amended Rule 61 motion, which the Superior Court denied. *See State v. Lacombe*, 2016 WL 6301233 (Del. Super. Ct. Oct. 25, 2016). The Delaware Supreme Court affirmed that decision on May 17, 2017. *See LaCombe v. State*, 2017 WL 2180545, at *1 (Del. May 17, 2017).

Petitioner filed a second *pro se* Rule 61 motion in June 2017, which the Superior Court summarily dismissed on December 21, 2017. (D.I. 18-1 at 16; *see also LaCombe*, 2017 WL 6550430, at *1. The Delaware Supreme Court affirmed that decision on April 5, 2018. *See LaCombe v. State*, 2018 WL 1678765 (Del. Apr. 5, 2018).

## III.   GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or

2

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To

3

demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

**B. Standard of Review**

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C.

4

§ 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV.   DISCUSSION

The Petition asserts the following 14 grounds for relief: (1) trial counsel provided ineffective assistance by failing to present mitigating evidence during sentencing (D.I. 11 at 5; D.I.. 3 at 7); (2) trial counsel was ineffective for failing to require specific performance from the State when the State breached its plea agreement (D.I. 11 at 13); (3) appellate counsel provided ineffective assistance by failing to adequately argue the disproportionality of his sentence on direct appeal (D.I. 11 at 19; D.I. 3 at 7); (4) appellate counsel was ineffective for failing to adequately argue that his life

sentence is grossly disproportionate (D.I. 11 at 35; D.I. 3 at 7); (5) the State engaged in prosecutorial

misconduct during the sentencing hearing by referring to rap lyrics, which were written by

Petitioner, in violation of Delaware Rules of Evidence ("DRE") 404(b) (D.I. 11 at 40); (6) the State

engaged in prosecutorial misconduct during the sentencing hearing by "improperly vouching" that

Petitioner chose not to show his face because he intended to rob the victims again later (D.I. 11 at

44); (7) the State engaged in prosecutorial misconduct during the sentencing hearing by "vouching"

that co-defendants Elijah Pressley and Christie Emmons were willing to testify and that their

statements were credible (D.I. 11 at 47); (8) the State engaged in prosecutorial misconduct by

denying Petitioner an opportunity to review his co-defendants' statements that were made four days

before his plea hearing, in violation of DRE 807, and trial counsel provided ineffective assistance by

failing to ask for such an opportunity  (D.I. 11 at 55-57); (9) the State engaged in prosecutorial

misconduct by improperly introducing evidence of uncharged misconduct at sentencing in violation

of DRE 404(b) (D.I. 11 at 58-63); (10) the arrest warrant contained false information (D.I. 11 at 64);

(11) the evidence was insufficient with respect to the felony murder charge, allowing Petitioner to

make an "actual innocence" claim (D.I. 11 at 67; D.I. 3 at 8); (12) Petitioner's life sentence violates

the Eighth Amendment (D.I. 3 at 5); (13) the State engaged in prosecutorial misconduct by

breaching the plea agreement to "not" recommend more than 22 years at sentencing and improperly

bolstering its theory to increase his sentence (D.I. 3 at 5, 10); and (14) Petitioner is actually innocent

of second degree murder (D.I. 3 at 8; D.I. 11 at 67-68).  For eases of analysis, the Court will address

the claims reviewed under § 2254(d) first (Claims Twelve and Thirteen), the ineffective assistance of

counsel claims second (Claims One through Four), the procedurally barred claims third (Claims Five

through Eleven), and the actual innocence claim (Claim Fourteen) last.

### A.  Claim Twelve: Eighth Amendment Violation

In Claim Twelve, Petitioner asserts that his life sentence violates the Eighth Amendment because he was not the shooter.  Petitioner raised this argument on direct appeal, and the Delaware Supreme Court denied it as meritless.  Therefore, Claim Twelve will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Eighth Amendment forbids cruel and unusual punishment, and it applies to the States via the Fourteenth Amendment.  *See Robinson v. California*, 370 U.S. 660, 667 (1962).  Two decisions of the United States Supreme Court summarize the applicable Eighth Amendment principles for non-capital sentencing: *Lockyer v. Andrade*, 538 U.S. 63 (2003), and *Ewing v. California*, 538 U.S. 11 (2003).  In *Lockyer*, the Supreme Court extensively reviewed its prior cases dealing with Eighth Amendment challenges to criminal sentences, and concluded that it has "not established a clear and consistent path for courts to follow" in determining whether a particular sentence for a term of years can violate the Eighth Amendment."  538 U.S. at 72.  The *Lockyer* Court explained that, for the purposes of analyzing an Eighth Amendment claim under § 2254(d)(1), the only clearly established governing legal principle is that "the gross disproportionality principle, the precise contours of which are unclear, [is] applicable only in the 'exceedingly rare' and 'extreme' case."  *Id.*  The *Lockyer* Court then held that a recidivist's minimum sentence of 50 years was not grossly disproportionate to the two counts of petty theft offenses that triggered the application of the recidivist statute.  *See id.* at 67, 77.

In *Ewing*, the Supreme Court rejected the defendant's claim that a sentence of 25 years to life for stealing three golf clubs was "grossly disproportionate" to the crime.  538 U.S. at 20, 28.  The *Ewing* Court reiterated that the Eighth Amendment "contains a 'narrow proportionality principle'

7

that 'applies to noncapital sentences,'" which "does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 20, 23. The *Ewing* Court explained that a court engaging in the proportionality analysis must compare the harshness of the penalty imposed upon the defendant with the gravity of his triggering offenses and criminal history. *See id.* at 28-29. "In weighing the gravity of [the defendant's] offense, [the court] must place on the scales not only his current felony, but also his long history of felony recidivism." *Ewing*, 538 U.S. at 29.

Petitioner argued to the Delaware Supreme Court that his sentence was grossly disproportionate because he received the same sentence as his brother, who was the shooter and who pled guilty to first degree murder. The Delaware Supreme Court rejected this claim. *See LaCombe*, 2014 WL 2522273, at *1-2. After reviewing the Delaware Supreme Court's denial of Petitioner's Eighth Amendment argument, the Court concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, the "gross proportionality" standard as articulated in *Lockyer* and *Andrade*. Petitioner's case started as a capital case, but trial counsel obtained a plea offer to second degree murder, resulting in Petitioner's maximum sentence for second degree murder being life imprisonment. Petitioner's life sentence was based on his guilty plea to second degree murder (as a lesser included offense of first degree murder), PFDCF, attempted first degree robbery, and second degree conspiracy for his role in the shooting deaths of two people. In accordance with *Lockyer* and *Ewing*, the Delaware Supreme Court compared the sentence imposed to the crime committed, and concluded that the facts did not come close to creating an inference of gross disproportionality:

> [Petitioner] pled guilty to murder – the most heinous violent crime. Although [Petitioner] did not pull the trigger, he gave the gun to his mentally ill brother, who was attempting to commit armed robbery.

8

> Two people were killed in an incident that [Petitioner] planned and set in motion. There is nothing extreme, or grossly disproportionate, about sentencing a murderer to life in prison.

*LaCombe*, 2014 WL 2522273, at *1-2.

Given these circumstances, the Court concludes that the Delaware Supreme Court's denial of Petitioner's Eighth Amendment argument was neither contrary to, nor an unreasonable application of, the "gross proportionality" standard as articulated in *Lockyer* and *Ewing*.  Thus, the Court will deny Petitioner's Eighth Amendment Claim for failing to satisfy § 2254(d).

### B. Claim Thirteen: Prosecutorial Misconduct

In Claim Thirteen, Petitioner contends that the State breached the plea agreement to "not" recommend more than 22 years at sentencing and improperly bolstered its theory to increase his sentence during the sentencing hearing.  Petitioner alleges that the following statement made by the State during sentencing constituted an argument for a sentence greater than 22 years:

> So don't be fooled when you consider what sentence to give [Petitioner] by the fact that he stayed in the car when this robbery and the double homicide occurred.  He didn't pull the trigger, but he may as well have, because he set the whole thing into play.

(D.I. 11 at 15; D.I. A53) (hereinafter referred to as the "don't be fooled" statement)  According to Petitioner, the "don't be fooled" statement "signaled to the court [that] the sentencing recommendation was not appropriate in this case."  (D.I. 11 at 18)

Petitioner raised this argument in his first Rule 61 motion and subsequent post-conviction appeal, along with a related argument that trial counsel provided ineffective assistance for not requiring specific performance from the State after it allegedly breached the agreement.  The Superior Court denied both arguments, opining:

> [Petitioner's] contention that the State breached this agreement by indirectly arguing at sentencing that [Petitioner] deserved a harsher

9

sentence than was agreed upon is without merit. The State's presentation was within the scope of appropriate comment during sentencing proceedings, and further, the Court was in no way obligated to impose the State's recommendation.

In Delaware, agreements between a defendant and the State are governed by contract principles. Included in those general contract principles is the implied covenant of good faith and fair dealing. That covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to a contract from receiving the fruits of the bargain.

In this case, the State did not breach its agreement with [Petitioner]. In fact, the State performed exactly as the terms of the plea agreement stated. The State recommended the agreed upon sentence of twenty-two years. Where a plea agreement exists, the State is entitled, as it did in this case, to support its plea agreement with the presentence investigation and other factors relevant to the reasonableness of the sentence recommendation. The State appropriately presented victim impact statements and brought aggravating factors to the attention of the Court. What the State presented in this case did not even rise to the level of the State's action in *Jones v. State*, where Justice Holland stated, "[a]lthough some of the State's comments at sentencing were speculative and more restraint might have been shown . . . we find that the State's comments failed to rise to the level of subverting the integrity of the plea bargaining process." Trial counsel, therefore, could not have been deficient for failing to seek the specific performance of the plea agreement.

Even if the State did breach its agreement with [Petitioner], there was no prejudice from trial counsel's failure to argue for the specific enforcement of the plea agreement. The State's recommendation does not bind the Superior Court. The Court was free to exercise its discretion in sentencing [Petitioner] within the statutory limits. When accepting the plea agreement, [Petitioner] knew he faced exposure of up to life imprisonment for his offenses.

*LaCombe*, 2016 WL 6301233, at *7-8. The Delaware Supreme Court considered the argument in

Claim Thirteen on the merits, and affirmed the Superior Court's judgment, opining:

The Superior Court correctly observed that plea agreements are governed by contract principles, including an implied covenant of good faith and fair dealing. This principle "applies 'when the party asserting the implied covenant proves that the other party has acted

arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected.'" To put it simply, a deal is a deal: if the State makes a plea deal with a defendant, it should stick to it and not engage in conduct that is designed to undermine it. Here, the State should have exercised more restraint, but did not cross the line that would trigger reversal.

*LaCombe*, 2017 WL 2180545, at *6.

Pursuant to *Santobello v. New York*, 404 U.S. 257, 261-63 (1971), plea agreements are analyzed under contract law standards. *See United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998). "When a criminal defendant claims that the government breached its plea agreement, the first step is to define what the government agreed to do." *Dunn v. Colleran*, 247 F.3d 450, 458 (3d Cir. 2001). Significantly, *Santobello* does not address implicit repudiations of a plea agreement, and the Constitution does not require a prosecutor to "enthusiastically" make an agreed-upon sentencing recommendation. *United States v. Benchimol*, 471 U.S. 453, 455-56 (1985).

In this case, the plea agreement specifically states that the "State will recommend 22 years Level 5 followed by L4 and L3 probation." (D.I. 18-6 at 23) While the State's "don't be fooled" statement could, when viewed in isolation, support different interpretations, reading the statement in context with the sentencing transcript demonstrates that the Delaware state courts reasonably determined that the "don't be fooled statement" did not constitute a breach of the plea agreement. Petitioner and his brother, Paul, the shooter, were sentenced together. (D.I. 18-2 at 13-26) At the start of the joint sentencing hearing, the Superior Court addressed preliminary matters, and then moved on to sentencing. The State explained that it would present one presentation for both defendants, and then would speak separately about the State's sentencing recommendation. (D.I. 18-2 at 17) The victims' families read statements to the Superior Court. (D.I. 18-2 at 17-20) After the victims' families spoke, the State briefly recited the facts of the case, Paul LaCombe's

11

(Petitioner's brother) confession and his acceptance of responsibility, and the relative roles of the various parties. (D.I. 18-2 at 20) The State then made the "don't be fooled" statement, but immediately followed that statement by reiterating its sentence recommendation:

> So don't be fooled when you consider what sentence to give [Petitioner] by the fact that he stayed in the car when this robbery and the double homicide occurred. He didn't pull the trigger, but he may as well have, because he set the whole thing into play.
>
> Now, he has pled to a series of charges before this Court, and the State is recommending that he receive 22 years Level V time followed by a lengthy period of probation when he is released.

(D.I. 18-2 at 21) Thereafter, the State addressed Paul LaCombe's sentence, stating: "Paul has pled to a murder first charge, and, as the Court and everyone in the room is aware, there is only one sentence available to Paul, and that is natural life, and that is what we're asking for Paul." (D.I. 18-2 at 21) The Superior Court then asked the attorneys for both defendants to speak. Petitioner's trial counsel stated:

> I would submit to the Court that when this plea offer was structured, that all the issues the State raised before Your Honor today about [Petitioner's] involvement and being the mastermind behind this was incorporated in the plea. He's facing a minimum of 21 years, and the State has capped the recommendation at 22 years.

(D.I. 18-2 at 24)

In this case, because two defendants were being sentenced at the same time, the State needed to explain their relative roles, especially when justifying the sentence it was seeking for Paul LaCombe, the shooter. The "don't be fooled" statement came after the State's straightforward recitation of the facts of the case, just prior to the State's explanation of its reasoning for accepting a guilty but mentally ill plea from Paul LaCombe, the shooter, and recommending a life sentence rather than otherwise seeking the death penalty for Paul. The "don't be fooled" statement

supported the State's sentence recommendation of 22 years "followed by a lengthy period of probation when he is released." Notably, Petitioner's plea agreement did not bind the State's recommendation regarding the length of probation, leaving the State to argue, as it did, that a long probation was needed. In contrast, pursuant to the plea agreement, the State's responsibility during the sentencing hearing was to recommend "capping" the sentence at 22 years of Level V incarceration, which it did. The State did not exceed its agreed-upon maximum sentencing recommendation and did not make inflammatory statements.

Given these circumstances, the Court concludes that the Delaware Supreme Court's holding that the State's "don't be fooled" comment did not breach the plea agreement constituted a reasonable determination of the facts under § 2254(d)(2), and also does not warrant relief under § 2254(d)(1). Accordingly, the Court will deny Claim Thirteen.

### C. Claims One Through Four: Ineffective Assistance of Counsel

In Claims One and Two, Petitioner contends that trial counsel provided ineffective assistance by failing to present mitigating evidence during sentencing and by failing to require specific performance from the State when the State breached its plea agreement. In Claims Three and Four, Petitioner argues that appellate counsel provided ineffective assistance by failing to adequately argue the disproportionality of his sentence on direct appeal and by failing to adequately argue the two-prong *Crosby* standard on disproportionate sentencing. The Delaware Supreme Court denied all four Claims as meritless. *See LaCombe*, 2017 WL 2180545, at *4. Therefore, Claims One through Four will not warrant relief unless the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established federal law governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny.

13

*See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 698.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Here, the Delaware Supreme Court decision was not contrary to *Strickland*. It correctly identified the *Strickland* standard

14

applicable to Claims One through Four.[2] *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."). It also reasonably applied the *Strickland* standard to the facts of Petitioner's case.

When performing the second prong of the § 2254(d) inquiry, the Court must review the Delaware Supreme Court's decision with respect to Petitioner's ineffective assistance of counsel Claims through a "doubly deferential" lens.[3] *See Richter*, 562 U.S. at 105. The relevant question when analyzing counsel's performance under the "doubly deferential lens" "is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* In turn, when assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the

---

[2] In the context of guilty pleas, courts also refer to *Hill v. Lockhart*, 474 U.S. 52 (1985), as providing the relevant inquiry for the prejudice prong of *Strickland*. However, since Claims One through Four allege ineffective assistance with respect to his sentencing, and not his guilty plea, *Strickland* is the proper standard.

[3] As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

562 U.S. at 105 (internal citations omitted).

lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### 1.  Claim One: Trial counsel's failure to submit mitigation report

When denying Claim One, the Delaware Supreme Court reviewed the state court record and concluded that trial counsel's decision to withhold the mitigation report was objectively reasonable. Specifically, the Delaware Supreme Court opined:

> Trial Counsel engaged in a thorough investigation of potential mitigating evidence and made a strategic decision not to use it because it might open the door to harmful evidence. [Petitioner] has not overcome the strong presumption that this decision was a sound strategy designed to maximize [Petitioner's] opportunity to secure a favorable sentence.

*Lacombe*, 2017 WL 2180545, at *5.

The record supports the Delaware Supreme Court's conclusion.  Although the practice of retaining a mitigation specialist "is more common in capital cases," trial counsel fulfilled his obligation to investigate by retaining "the services of a mitigation specialist in order to uncover evidence of potential mitigating value" for Petitioner's case.  *LaCombe*, 2016 WL 6301233, at *6.  In his Rule 61 affidavit, trial counsel explains that he made a strategic decision not to introduce the mitigation report, because it contained a disclosure from Petitioner's mother that Petitioner sexually abused his younger brother (co-defendant Paul LaCombe) throughout their childhood.  Trial counsel believed this information would bolster the State's argument and potentially hurt Petitioner's case.  Trial counsel's decision not to enter the mitigation report was reasonably objective at the time it was made, especially when viewed in connection with the Superior Court's already-existing perception of Petitioner's role in the incident as "being fairly equal in different respects to that of [Petitioner's] brother."  (D.I. 18-6 at 61)

16

Significantly, the record reveals that trial counsel presented other types of mitigation evidence on behalf of Petitioner, including letters of support from friends and family and a timeline of Petitioner's life created by the mitigation specialist. Trial counsel also assisted Petitioner in preparing a statement to the Court, in which Petitioner expressed remorse. Given this record, the Court concludes that reasonable jurists could agree that trial counsel did not perform deficiently by not submitting the mitigation report. *See Richter*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.").

Petitioner has also failed to establish prejudice. As the Delaware Supreme Court noted, "the Superior Court's comments after reviewing the mitigation report in this matter suggest that omitting the report did not result in prejudice because it would not have impacted [Petitioner's] sentence." *LaCombe*, 2017 WL 2180545, at *5. In fact, even after reviewing the mitigation report during the Rule 61 proceeding, the Superior Court held that Petitioner's sentence "remain[s] appropriate, and no degree of mitigating evidence, as represented by [Petitioner's] current counsel, would have changed the outcome of [Petitioner's] sentence." *LaCombe*, 2016 WL 6301233, at *7. Given these circumstances, the Court concludes that the Delaware Supreme Court's rejection of Claim One was not unreasonable under the doubly deferential lens of AEDPA and *Strickland*.

## 2. Claim Two: Trial counsel's failure to seek specific performance of plea agreement

In Claim Two, Petitioner contends that trial counsel was ineffective for failing to demand specific performance of his plea agreement. This argument is premised on Petitioner's belief that the State breached the plea agreement during the sentencing hearing when it made the "don't be fooled" statement, discussed at length above in the Court's analysis of Claim Thirteen. *See supra* at

17

Section IV.B. To briefly reiterate, the Court has concluded that the Delaware Supreme Court reasonably determined the facts and reasonably applied clearly established federal law in holding that the State did not breach the plea agreement by making the "don't be fooled" statement. If there was no breach, there was nothing more for trial counsel to seek in terms of specific performance. Therefore, Petitioner's failure to seek specific performance in a non-breach situation did not fall below an objective standard of reasonableness.

Moreover, Petitioner has not established that his sentence would have been different if the State refrained from making the "don't be fooled" statement. The Superior Court was not obligated to follow the State's sentencing recommendation and had discretion to sentence Petitioner to life in prison, which it did. Given these circumstances, the Delaware Supreme Court reasonably applied *Strickland* in holding that Petitioner was not prejudiced by trial counsel's failure to seek specific performance of the plea agreement.

### 3. Appellate counsel's alleged ineffective assistance

In Claims Three and Four, Petitioner contends that appellate counsel provided ineffective assistance by failing to effectively argue that the disproportionality of his life sentence violated his rights under the Delaware and United States Constitution. More specifically, citing the two-pronged test established in *Crosby v. State*, 824 A.2d 894, 908 (Del. 2003), Petitioner contends that appellate counsel should have provided more cases to demonstrate the disproportionality of his sentence.[4] The Delaware Supreme Court rejected Petitioner's complaints about appellate counsel, holding that

---

[4]In *Crosby v. State*, the Delaware Supreme Court discussed the requirements of the Eighth Amendment's prohibition against cruel and unusual punishment, and enumerated a two-pronged disproportionate sentence test. 824 A.2d 894, 908 (Del. 2003). Pursuant to the *Crosby* test, a court must "undertake a threshold comparison of the crime committed and the sentence imposed. If such a comparison leads to an inference of gross disproportionality, then [the reviewing court] must compare [defendant]'s sentence with other similar cases to determine whether the trial court acted out of step with sentencing norms." *Id.*

18

appellate counsel adequately represented Petitioner despite the fact that he failed to provide a survey of comparable cases to demonstrate the disproportionality of his sentence under the second prong of the *Crosby* test. The Delaware Supreme Court noted that the comparable case analysis relates to the second step of the *Crosby* analysis, which it expressly did not reach on direct appeal:

> The first part of the disproportionality test requires the Court to compare the crime [Petitioner] committed with the sentence imposed. [Petitioner] pled guilty to murder – the most heinous violent crime. Although [Petitioner] did not pull the trigger, he gave the gun to his mentally ill brother, who was attempting to commit armed robbery. Two people were killed in an incident that Lacombe planned and set in motion. There is nothing extreme, or grossly disproportionate, about sentencing a murderer to life in prison. Because the sentence does not raise an inference of gross disproportionality, the Court does not undertake the second step of the *Crosby* analysis, where the fact that [Petitioner] received the same sentence as his brother would be considered.

*LaCombe*, 2017 WL 2180545, at *5. The Delaware Supreme Court further found that Petitioner failed to demonstrate prejudice, given that Court's "continuing view that there was nothing grossly disproportionate about sentencing [Petitioner] to life in prison for his role in the shooting deaths of two people." *Id.*

As discussed at length in the Court's analysis of Claim Twelve, the Court has concluded that the Delaware Supreme Court reasonably applied clearly established federal law in holding that Petitioner's life sentence does not violate the Eighth Amendment. *See supra* Section IV.B. Consequently, the Delaware Supreme Court reasonably applied *Strickland* in holding that appellate counsel did not provide ineffective assistance by failing to present a meritless Eighth Amendment argument. Accordingly, the Court will deny Claims Three and Four for failing to satisfy § 2254(d).

## C.  Claims Five through Eleven: Procedurally Barred

Petitioner presented Claims Five through Eleven in his second Rule 61 motion.  (D.I. 18-27 at 14-42)  The Superior Court denied these Claims as time-barred under Rule 61(i)(1), successive under Rule 61(i)(2), and procedurally defaulted under Rule 61(i)(3).  The Delaware Supreme Court affirmed that decision.

By applying the procedural bars of Rule 61(i)(1),(2), and (3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-64 (1984), that its decision rested on state law grounds.  This Court has consistently held that Rule 61(i)(1) and (3) are independent and adequate state procedural rules effectuating a procedural default.  *See Trice v. Pierce*, 2016 WL 2771123, at *4 (D. Del. May 13, 2016).  Therefore, the Court cannot review the merits of Claims Five through Eleven absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner attempts to establish cause for his default by claiming appellate and postconviction counsel were ineffective for failing to raise the instant seven Claims on direct appeal or in his first Rule 61 proceeding.  (D.I. 11 at 30-34)  To the extent this allegation is an attempt to demonstrate cause for his default under *Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012), the attempt is unavailing.  In *Martinez*, the Supreme Court held that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may (under certain circumstances) establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel.  *Id.* at 12, 16-17.  The Third Circuit has explained the application of *Martinez* in habeas cases:

> *Martinez* recognizes a narrow exception to the doctrine of procedural default: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." This exception is available to a petitioner who can show that: 1) his procedurally defaulted

20

> ineffective assistance of trial counsel claim has "some merit," and that
> 2) his state-post conviction counsel was "ineffective under the
> standards of *Strickland v. Washington*."

*Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019). "To demonstrate that his claim has

some merit, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter,

agree that) the petition should have been resolved in a different manner or that the issues presented

were adequate to deserve encouragement to proceed further.'" *Id.* at 938 (quoting *Miller-El*, 537 U.S.

at 336). To demonstrate that post-conviction counsel's ineffectiveness caused the procedural

default, a petitioner must show that post-conviction counsel's performance was deficient under the

first prong of the *Strickland* standard, *i.e.*, "that his state post-conviction counsel's performance fell

below an objective standard of reasonableness." *Workman*, 915 F.3d at 941.

Since *Martinez* can only apply to excuse the default of claims alleging ineffective assistance of

trial counsel, Petitioner's allegation of ineffective assistance of postconviction counsel does not

excuse the procedural default of the freestanding claims for relief asserted in Claims Five through

Eleven. Petitioner's attempt to establish cause by blaming appellate counsel's failure to raise the

freestanding claims on direct appeal also cannot establish cause, because those ineffective assistance

of appellate counsel allegations are themselves procedurally defaulted. *See Murray*, 477 U.S. at 488-89

(finding claim of ineffective assistance of counsel must be presented to state courts as independent

claim before it may be used to establish cause for procedural default); *Kellum v. Pierce*, 24 F. Supp. 3d

390, 405 (D. Del. 2014). Finally, the limited *Martinez* rule does not apply to excuse any default that

may have occurred in his second Rule 61 proceeding, because *Martinez* only excuses defaults

occurring in the initial collateral proceeding.

Notably, Claim Eight presents two arguments: the freestanding prosecutorial misconduct

argument that the Court just determined to be procedurally defaulted, and a related assertion that

21

trial counsel was ineffective for failing to ask for an opportunity to review his co-defendants' statements under DRE 807. To the extent Petitioner contends that postconviction counsel was ineffective for failing to assert the ineffective assistance of trial counsel argument contained in Claim Eight in his first Rule 61 motion as a method for establishing cause under *Martinez*, the attempt is unavailing. Petitioner has failed to demonstrate that the instant underlying ineffective assistance of trial counsel claim is substantial. A criminal defendant's valid guilty plea waives all non-jurisdictional issues and claims "relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Trice*, 2016 WL 2771123, at *5. Consequently, by entering a voluntary guilty plea, a petitioner waives claims of ineffective assistance of counsel involving counsel's performance prior to the entry of the guilty plea that do not challenge the voluntariness of the plea. *See Cooper v. Carroll*, 2007 WL 4168209, at *6 (D. Del. Nov. 7, 2007).

In this case, the plea colloquy, plea agreement and truth-in-sentencing guilty plea form reflect that Petitioner freely, knowingly, voluntarily, and intelligently pled guilty, and that he specifically stated he had consulted with trial counsel and understood the rights he was giving up by pleading guilty. (D.I. 18-6 at 23-28) By pleading guilty, Petitioner voluntarily relinquished his right to challenge the nature, sufficiency, and veracity of the State's evidence, including his co-defendants' statements. The instant underlying ineffective assistance of trial counsel claim also fails because Petitioner affirmed on his truth-in-sentencing guilty plea form and during the plea colloquy that he was satisfied with his attorney's representation and advice and that his attorney did not force him to enter the plea. (D.I. 18-6 at 24, 37-38) Petitioner's unsupported allegations in this Court fail to provide compelling evidence as to why the statements he made in the plea agreement and the truth-in-sentencing guilty plea form, and during the plea colloquy, should not be presumptively accepted as true. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a

22

strong presumption of verity [creating a] formidable barrier in any subsequent collateral proceedings.") For these reasons, Petitioner has failed to establish cause for the ineffective assistance of trial counsel allegation.

Petitioner does not provide any other cause for his default of Claims Five through Eleven. In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. *See infra* Section IV.D. Accordingly, the Court will deny Claims Five, Six, Seven, Eight, Nine, Ten, and Eleven as procedurally barred from habeas review.

### D.   Claim Fourteen: Actual Innocence

In his final Claim, Petitioner contends he is actually innocent of second degree murder, because the "murder was not committed in the furtherance of the commission of robbery. [Rather, the] murder of the victims was committed not while co-defendant attempted to rob victims, only when co-defendant attempted to escape from vehicle and realized doors were locked." (D.I. 11 at 67-68) Although, in "certain exceptional cases involving a compelling claim of actual innocence," a prisoner may assert actual innocence as a gateway for obtaining habeas review of defaulted claims,[5] whether a freestanding claim of actual innocence is cognizable on federal habeas review remains an open question in Supreme Court jurisprudence. *See Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)). Even for gateway claims, "[a]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. Assuming, arguendo, that an assertion of actual innocence could constitute a freestanding claim, a petitioner's burden on any such claim "would necessarily be extraordinarily high" and "more

---

[5] *See House v. Bell*, 547 U.S. 518, 521, 536-37 (2006).

23

demanding" than that applied to gateway actual-innocence claims. *Herrera v. Collins*, 506 U.S. 390, 416 (1993); *see also Reeves*, 897 F.3d at 160 n.4 (describing hypothetical freestanding actual-innocence standard as "more demanding" than that applied to gateway actual-innocence claims). To put the burden for establishing a freestanding claim of actual innocence in perspective, a gateway actual innocence claim that is asserted in an effort to overcome the statute of limitations bar for habeas cases will only succeed if it is based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [ ] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, Petitioner has not presented  any facts to establish his actual innocence; nor has he presented any colorable evidence of his actual innocence. Therefore, Petitioner's instant assertion of innocence does not satisfy the *McQuiggan/Schlup* standard for actual innocence.

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing.  An appropriate Order will be entered.